IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Frank Siragusa, Kruti Bhatt, Lenore Dudick, and Anthony Dudick, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Taco Bell Corp.,<br><br>Defendant. | Case No.: 1:23-cv-5748 DG-RER<br><br>**JURY TRIAL DEMANDED** |

# FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Frank Siragusa ("Siragusa"), Kruti Bhatt ("Bhatt"), Lenore Dudick, and Anthony Dudick, by and through their undersigned counsel, upon personal knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

1. Plaintiffs bring this action against defendant Taco Bell Corp. ("Taco Bell"), on behalf of themselves and all other similarly situated individuals who purchased a Crunchwrap Supreme®, Grande Crunchwrap®, Vegan Crunchwrap®, Mexican Pizza, and/or Veggie Mexican Pizza, from a Taco Bell store located in New York, including purchases made on the websites and/or mobile applications for Taco Bell, Ubereats, Postmates, Grubhub, Seamless, and/or Doordash, during the period July 31, 2020, through the date of the final disposition of this action (the "Class Period).

1

## FACTUAL ALLEGATIONS

2.	This is a class action against Taco Bell for unfair and deceptive trade practices for falsely advertising the amount of beef and/or ingredients contained in Taco Bell's Crunchwrap Supreme®, Grande Crunchwrap®, Vegan Crunchwrap®, Mexican Pizza, and Veggie Mexican Pizza menu items (the "Overstated Menu Items").

3.	Taco Bell's advertisement for the Crunchwrap Supreme® looks as follows when compared to the actual item provided to customers[1]:

**CRUNCHWRAP SUPREME® ADVERTISMENT**              **ACTUAL CRUNCHWRAP® SUPREME RECEIVED**

  

---

[1]The current advertisement for the Crunchwrap Supreme® can be located at https://www.tacobell.com/food/specialties/crunchwrap-supreme, and the photograph of the actual Crunchwrap Supreme® received by a customer can be located at https://www.reddit.com/r/tacobell/comments/u6fslk/crunch_wraps_are_a_joke_nowadays/.

4. Taco Bell's advertisement for the Grande Crunchwrap® looks as follows when compared to the actual item provided to customers[2]:

**GRANDE CRUNCHWRAP® ADVERTISMENT**   **ACTUAL GRANDE CRUNCHWRAP® RECEIVED**

 

5. Taco Bell's advertisement for the Vegan Crunchwrap® looks as follows when compared to the actual item provided to customers[3]:

**VEGAN CRUNCHWRAP® ADVERTISMENT**   **ACTUAL VEGAN CRUNCHWRAP® RECEIVED**

 

---

[2] The advertisement for the Grande Crunchwrap Supreme® can be located at https://www.tacobell.com/food/specialties/grande-crunchwrap, and the screenshot of the actual Crunchwrap Supreme® received by a customer can be located at https://youtu.be/ZgsnCUs4S2A?t=445.

[3] The advertisement for the Vegan Crunchwrap® can be located at https://www.foodnetwork.com/fn-dish/news/where-to-get-taco-bell-vegan-crunchwrap-supreme, and the screenshot of the actual Vegan Crunchwrap® received by a customer can be located at https://youtu.be/lQZX3qeu2FA?t=83.

6. Taco Bell's advertisement for the Mexican Pizza looks as follows when compared to the actual item provided to customers[4]:

**MEXICAN PIZZA ADVERTISMENT**          **ACTUAL MEXICAN PIZZA RECEIVED**

 

7. Taco Bell's advertisement for the Veggie Mexican Pizza looks as follows when compared to the actual item provided to customers[5]:

**VEGGIE MEXICAN PIZZA ADVERTISMENT**      **ACTUAL VEGGIE MEXICAN PIZZA RECEIVED**

 

---

[4] The advertisement for the Mexican Pizza can be located at https://www.tacobell.com/food/specialties/mexican-pizza, and the screenshot of the actual Mexican Pizza received by a customer can be located at https://www.insider.com/review-taco-bell-mexican-pizza-2022-5.

[5] The advertisement for the Veggie Mexican Pizza can be located at https://www.tacobell.com/food/specialties/veggie-mexican-pizza?store=034922, and the screenshot of the actual Veggie Mexican Pizza received by a customer can be located at https://www.insider.com/review-taco-bell-mexican-pizza-2022-5.

8. Taco Bell materially overstates the amount of beef and/or ingredients contained in its advertisements for the Overstated Menu Items by at least double the amount.

9. Taco Bell uses the same uniform photographs on Taco Bell's in-store and drive-thru menu ordering boards, and on the websites and mobile applications for Taco Bell, Ubereats, Postmates, Grubhub, Seamless, and Doordash.

10. Taco Bell's advertisements for the Overstated Menu Items are unfair and financially damaging to consumers as they are receiving a product that is materially lower in value than what is being promised.

11. Taco Bell's actions are especially concerning now that inflation, food, and meat prices are very high and many consumers, especially lower income consumers, are struggling financially.

12. Taco Bell's promise to consumers of a large portion of food with their purchase are also causing consumers to come to, or order from, Taco Bell's restaurants and make purchases that they would not have otherwise made.

13. Taco Bell is also unfairly competing with restaurants that more fairly advertise the size of their menu items.

14. Taco Bell advertises larger portions of food to steer consumers to their restaurants for their meals and away from competitors that more fairly advertise the size of their menu items, unfairly diverting millions of dollars in sales that would have gone to competitors.

15. On September 15, 2022, a reporter for The U.S. Sun published an article stating that the Mexican Pizza "wasn't as beefy as the commercial pictures made it look."[6]

---

[6] Anthony Russo, *PIZZA THAT I tried Taco Bell's new Mexican pizza as it returns to menu again – it looks NOTHING like the pictures*, THE U.S. SUN, September 15, 2022, https://www.the-sun.com/money/6213398/taco-bell-mexican-pizza-review-taste-2/.

16. On June 15, 2022, a reporter for Mashed.com published an article stating that many consumers were complaining about the lack of beef in Taco Bell's Crunchwrap.[7]

17. Numerous consumers have also posted complaints online. For example, a YouTube food reviewer named Brennen Taylor, who has extensive experience reviewing food items, posted a review of the Mexican Pizza on September 16, 2022, in which he stated that the Mexican Pizza he purchased did not look like the pictures or advertisements. *See* https://youtu.be/TCEs96yzf5g?t=110.

18. On October 2, 2022, a YouTube food reviewer with extensive experience reviewing food items, who has a YouTube channel named It's Birdie!, posted the following YouTube short titled "Taco Bell's Mexican Pizza Is Not The Same" and she stated that the new Mexican Pizza was smaller than Taco Bell's original Mexican Pizza and not as thick. *See* https://www.youtube.com/shorts/1hau9Ny-dl4.

## PLAINTIFFS' ALLEGATIONS

19. On September 20, 2022, Plaintiff Siragusa purchased a Mexican Pizza at a Taco Bell store located in Ridgewood, New York for $5.49 plus tax.

20. Plaintiff Siragusa viewed Taco Bell's advertisements on the internet and at the store location before purchasing his Mexican Pizza and expected the Mexican Pizza that he purchased to contain a similar amount of beef and bean filling as contained in the pictures of the Mexican Pizza in Taco Bell's advertisements.

21. However, the Mexican Pizza that Plaintiff Siragusa purchased contained approximately half of the beef and bean filling that he expected and looked like the image pictured *supra* at ¶ 6.

---

[7] Colin McCandless, *Why Reddit Is Calling Out Taco Bell's Skimpy Crunchwraps*, MASHED, June 15, 2022, https://www.mashed.com/896849/why-reddit-is-calling-out-taco-bells-skimpy-crunchwraps/.

22. If Plaintiff Siragusa knew that the Mexican Pizza contained half of the amount of beef and bean filling as advertised, he would not have purchased the Mexican Pizza and/or he would not have paid the $5.49 price that he paid for the Mexican Pizza.

23. During the Class Period, Plaintiff Bhatt purchased a Crunchwrap Supreme® and a Mexican Pizza at a Taco Bell located in New York.

24. Plaintiff Bhatt expected the amount of meat contained in said Crunchwrap Supreme® and Mexican Pizza to be similar to the photographs of the Crunchwrap Supreme® and Mexican Pizza on Tacobell.com and the store menu ordering board. However, the amount of beef and filling contained in her Crunchwrap Supreme® and Mexican Pizza was half of what was expected.

25. If Plaintiff Bhatt knew that the Crunchwrap Supreme® and Mexican Pizza contained half of the amount of meat as pictured in advertisements or the store menu ordering board, she would not have purchased them and/or she would not have paid the approximate $5 price that she paid for each of them.

26. In September of 2022, Plaintiff Lenore Dudick purchased a Mexican Pizza from a Taco Bell located in Nassau County, New York, for approximately $7. Mrs. Dudick viewed Taco Bell's advertisements for the Mexican Pizza on the internet and on the store menu ordering board prior to ordering. However, the Mexican Pizza she received contained barely any beef and bean filling and was materially less than the beef and bean filling that was advertised and/or pictured on Taco Bell's store menu ordering board.

27. If Mrs. Dudick knew that the Mexican Pizza contained a materially less amount of beef and bean filling than advertised or pictured on Taco Bell's menu ordering board, she would not have purchased the Mexican Pizza.

28. Mrs. Dudick initially thought the Mexican Pizza purchase that she made was a quality control issue because she remembered the Mexican Pizza being much larger and containing more filling when she purchased it in the years prior. Mrs. Dudick did not obtain a refund for her Mexican Pizza purchase.

29. In March of 2023, Plaintiffs Lenore Dudick and Anthony Dudick purchased two Crunchwrap Supreme® meals for a total of $18.88 at a Taco Bell located in Nassau County, New York.

30. Plaintiffs Lenore Dudick and Anthony Dudick expected the amount of beef contained in said Crunchwrap Supremes® to be similar to the photographs of the Crunchwrap Supreme® on the store menu ordering board and in advertisements online.

31. However, the Crunchwrap Supremes® that Plaintiffs Lenore Dudick and Anthony Dudick purchased were almost meatless. Photographs of the actual Crunchwrap Supremes® received by Plaintiffs Lenore Dudick and Anthony Dudick are as follows:



32. If Plaintiffs Lenore Dudick and Anthony Dudick knew that the Crunchwrap Supremes® contained a materially less amount of beef than as pictured in advertisements or the store menu ordering board, they would not have purchased the Crunchwrap Supreme® meals.

33. Plaintiff Lenore Dudick was now fed up with Taco Bell because she now believed that her purchases from Taco Bell were not quality control issues but recurring deception and "shrinkflation" on Taco Bell's part. Mrs. Dudick determined that she would fight to get her money back for the Crunchwrap Supreme® meal purchases this time.

34. Mrs. Dudick traveled back to the Taco Bell store location to request a refund. The store employee she spoke with was nasty to her and refused to provide a refund because she did not have the food with her to return.

35. Mrs. Dudick had to go back home and contact Taco Bell corporate customer service multiple times over several days and customer service did not offer her a refund until she threatened to dispute the charges with her credit card company and contact legal counsel for false advertising.

36. Although Ms. Dudick ultimately obtained a refund for the Crunchwrap Supreme® meal purchases in the amount of $18.88, she was not compensated for traveling back to the store location to request the refund or for her time in seeking a refund. Plaintiffs Lenore Dudick and Anthony Dudick were also not compensated for the cost of the initial travel to and from Taco Bell to purchase the Crunchwrap Supreme® meals. Moreover, Plaintiffs Lenore Dudick and Anthony Dudick are entitled to minimum statutory damages of $50 and $500 each for violations of New York General Business Law Sections 349 and 350, respectively, for which they were not compensated for.

37. Plaintiffs, on behalf of themselves and all others similarly-situated, seek to end Taco Bell's unfair and materially misleading advertising and request the following: 1) monetary damages fully compensating all individuals who purchased an Overstated Menu Item; 2) injunctive relief requiring Taco Bell to provide corrected advertising and/or to stop selling the Overstated Menu Items; and 3) such other relief as the Court deems necessary and appropriate.

## THE PARTIES

38. Plaintiff Frank Siragusa is a resident of Queens County, New York.  During the Class Period, Mr. Siragusa purchased a Mexican Pizza at a Taco Bell store located in Ridgewood, New York, within the Court's district.

39. Plaintiff Kruti Bhatt is a resident of Florida.  During the Class Period (defined below), Plaintiff Bhatt purchased a Mexican Pizza and a Crunchwrap Supreme® at a Taco Bell store located in New York.

40. Plaintiff Lenore Dudick is a resident of New York.  During the Class Period, Plaintiff Dudick purchased a Crunchwrap Supreme® and a Mexican Pizza at a Taco Bell store located in Nassau County, New York, within the Court's district.

41. Plaintiff Anthony Dudick is a resident of New York.  During the Class Period, Plaintiff Dudick purchased a Crunchwrap Supreme® at a Taco Bell store located in Nassau County, New York, within the Court's district.

42. Defendant Taco Bell System, Inc., is a California corporation, with its headquarters located in Irvine, California.  Taco Bell conducts business, directly or indirectly, in New York, under the name Taco Bell®.

## JURISDICTION AND VENUE

43. This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiffs Siragusa, Lenore Dudick, and Anthony Dudick are citizens of the state of New York and Defendant Taco Bell is a citizen of the state of California and is headquartered with its principal place of business in the state of California. The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which the number of members of the proposed class is not less than 100.

44. In addition, this Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U. S. C. § 1332(a) because the matter in controversy, which includes Plaintiffs' claims and the claims of the proposed class members, exceeds the sum or value of $75,000, exclusive of interest and costs, and certain members of the proposed class are citizens of states different from the states in which Defendant is a citizen.

45. Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Also, Defendant has used the laws within, and has done substantial business in, this judicial district in that it has promoted, marketed, distributed, and sold the products at issue in this judicial district. Finally, there is personal jurisdiction over Defendant in this judicial district.

## CLASS ACTION ALLEGATIONS

46. Plaintiffs brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3) on behalf of the following class:

> All persons or entities that purchased a Crunchwrap Supreme®, Grande Crunchwrap®, Vegan Crunchwrap®, Mexican Pizza, or Veggie Mexican Pizza, from a Taco Bell store, located in the state of New York, including any purchases on the websites and/or mobile applications for Taco Bell, Ubereats, Postmates, Grubhub, Seamless, and/or Doordash, during the period between

11

July 31, 2020, through the date of the final disposition of this action (the "Class Period").

47. Plaintiffs reserve the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

48. Plaintiffs reserve the right to establish additional sub-classes as appropriate.

49. This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(2) and (b)(3), and satisfies the requirements thereof.

50. There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

51. The members of the Class are so numerous that joinder of all members of the Class is impracticable. At this time, Plaintiffs believe that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

52. Plaintiffs' claims are typical of the claims of the members of the Class whom they seeks to represent because Plaintiffs and each member of the Class has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

53. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs have no interests that are adverse to those of the members of the Class that they seek to represent. Plaintiffs are committed to the vigorous prosecution of this action and, to that end,

Plaintiffs have retained counsel that is competent and experienced in handling complex class action litigation on behalf of consumers.

54. A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

    a. The expense and burden of individual litigation would not be economically feasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

    b. If separate actions were brought by individual members of the Class, the resulting multiplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

    c. Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

55. Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

56. The common questions of fact include, but are not limited to, the following:

    a. Whether Defendant's advertisements are materially misleading;

    b. Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

    c. Whether a reasonable consumer could be misled by Defendant's advertisements;

    d. Whether Defendant's advertisements violate N.Y. Gen. Bus. Law § 349;

    e.    Whether Defendant's advertisements violate N.Y. Gen. Bus. Law § 350; and

    f.    Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

57.    In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

58.    Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I
### Violation of New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349

59.    Plaintiffs incorporate by reference the allegations in every paragraph in this complaint.

60.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

61.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the members of the Class seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Overstated Menu Items.

62. Defendant misleadingly, inaccurately, and deceptively presents the Overstated Menu Items to consumers.

63. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class Members to purchase and/or pay a premium for Defendant's Overstated Menu items when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64. Plaintiffs and the members of the Class have been injured inasmuch as they received, at a minimum, 50% less than the amount of beef and ingredients that were advertised. Accordingly, Plaintiffs and the members of the Class received less than what they bargained and/or paid for.

65. Plaintiffs and the members of the Class suffered damages amounting to, at a minimum, the price that Taco Bell charges consumers for double the meat and/or ingredients, the exact amount to be determined at trial.

66. Plaintiffs and the members of the Class also incurred monetary damages for the cost of traveling to and from the Taco Bell locations where they made their purchases, and/or for the payment of tips and/or fees for delivery and/or pickup services.

67. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the members of the Class have been damaged thereby.

68. As a result of Defendant's "unlawful" deceptive acts and practices, Plaintiffs and the members of the Class are entitled to monetary damages, interest, and attorneys' fees and costs.

This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

**COUNT II**
**Violation of New York Deceptive Acts and Practices Act,**
**N.Y. Gen. Bus. Law § 350**

69. Plaintiffs incorporate by reference the allegations in every paragraph in this complaint.

70. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

71. Defendant's advertisements contain untrue and materially misleading statements concerning the amount of beef and/or ingredients contained in the Overstated Menu Items.

72. Defendant's advertising induced Plaintiffs and the members of the Class to buy Defendant's menu items.

73. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

74. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

75. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the

16

Overstated Menu Items were and continue to be exposed to Defendant's material misrepresentations.

76. Plaintiffs and the members of the Class have been injured inasmuch as they received, at a minimum, approximately 50% less than the amount of beef and/or ingredients that were advertised. Accordingly, Plaintiffs and the members of the Class received less than what they bargained and/or paid for.

77. Plaintiffs and the members of the Class suffered damages amounting to, at a minimum, the price that Taco Bell charges consumers for double the meat and/or ingredients, the exact amount to be determined at trial.

78. Plaintiffs and the members of the Class also incurred monetary damages for the cost of traveling to and from the Taco Bell locations where they made their purchases, and/or for the payment of tips and/or fees for delivery services.

79. As a result of Defendant's "unlawful" deceptive acts and practices, Plaintiffs and the members of the Class are entitled to monetary damages, interest, and attorneys' fees and costs, as well as statutory damages of $500 per unit purchased pursuant to GBL § 350.

## **RELIEF REQUESTED**

80. Accordingly, Plaintiffs, on behalf of themselves and the members of the Class, seek judgment as follows:

A. Certifying the Class as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class;

B. Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions set forth herein;

C.	Awarding Plaintiffs and the members of the Class statutory damages or compensatory damages in an amount according to proof at trial;

D.	Awarding declaratory and injunctive relief, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful or unlawful;

E.	Ordering Defendant to stop selling Overstated Menu Items or to correct the deceptive behavior;

F.	Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

G.	Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

H.	Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Class demand a trial by jury as to all matters so triable.

Dated: September 29, 2023  	/s/ *James C. Kelly*
James C. Kelly
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278
New York, New York 10001
T: 212-920-5042
E: jkelly@jckellylaw.com

Anthony J. Russo, Jr., P.A.
d/b/a The Russo Firm
301 West Atlantic Avenue, Suite O-2
Delray Beach, FL 33444

                                    T: 844-847-8300
                                    E: anthony@therussofirm.com

*Co-counsel for plaintiffs and the proposed Class*