*The Law Office of James C. Kelly*

*244 5th Avenue, Suite K-278*

*New York, New York 10001*

*Phone: (212) 920 5042*
*www.jckellylaw.com*
*jkelly@jckellylaw.com*

October 20, 2023

*VIA ECF*

The Honorable Diane Gujarati, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Siragusa et al. v. Taco Bell Corp.*, 23-cv-5748-DG-RER

Dear Judge Gujarati:

      I represent plaintiffs in the above captioned class action matter pending before Your Honor. Plaintiffs hereby submit the following in response to Taco Bell Corp.'s letter to Your Honor, dated October 13, 2023, requesting a pre-motion conference for a motion to dismiss.

      In this matter, Taco Bell Corp. was identified as materially misstating the amount of meat and/or filling in advertisements for several products for sale to the public by, at a minimum, double, or 100% more, than the amount that is contained in the recipes for the actual products. The products at issue are the Crunchwrap Supreme®, Grande Crunchwrap®, Vegan Crunchwrap®, Mexican Pizza, and/or Veggie Mexican Pizza sold at Taco Bell locations in the state of New York (the "Products"). Plaintiffs have identified the actual uniform advertisements at issue for the Products in the First Amended Class Action Complaint and provided an example of the actual products received from consumers in the marketplace. (ECF No. 7, ¶¶ 3-7.)

      Taco Bell Corp. argues that plaintiffs fail to show that a reasonable consumer could be misled by the challenged practices. However, as the Second Circuit has held, "[t]o state a claim for false advertising or deceptive business practices under New York…law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (citation omitted). Here, because plaintiffs have plausibly alleged that the Products contained, at a minimum, double the meat and/or filling than as explicitly advertised, the advertisements are likely to mislead a reasonable consumer acting reasonably under the circumstances.

      Just recently, in a similar case in the United States District Court, Southern District of Florida, Judge Roy Altman, in addressing reasonable consumers, stated:

> We won't lightly suppose that a proprietor can offer to sell you a certain amount of food at a specified price only to provide you with less food for the same price. Nor will we simply assume that most reasonable people would take lying down this incongruity

between the amount of sustenance they were promised and the amount of sustenance they got. We'll agree with Burger King (of course) that most reasonable people would be unfazed by, say, a one-percent disparity between the amount of food they were offered and the amount they ultimately received—just as (we would think) Burger King would concede that a fifty-percent delta between what was promised and what was sold would probably vex most reasonable consumers. In our case, the Plaintiffs allege, for instance, that "[a] side-by-side comparison of Burger King's former Whopper advertisement to the current Whopper advertisement shows that the burger increased in size by approximately 35% and the amount of beef increased by more than 100%," without any concomitant increase in the actual size of the burgers. Amended Complaint ¶¶ 8–9. Who are we to decide whether such a seemingly substantial difference between what was promised and what was sold was (or was not) enough to alter the purchasing preferences of reasonable American consumers? Far better, it seems to us, to leave that determination to the consumers themselves, who—if the case survives that far—will get to sit in the jury box and tell us what reasonable people think on the subject.

*See Coleman v. Burger King Corp.*, No. 22-cv-20925, 2023 U.S. Dist. LEXIS 149735 (S.D. Fla. Aug. 23, 2023).

Although Taco Bell argues that *Chimienti v. Wendy's Int'l, LLC*, No. 22-CV-02880 (HG), 2023 U.S. Dist. LEXIS 176535 (E.D.N.Y. Sep. 30, 2023), is applicable here, it is distinguished. In *Chimienti v. Wendy's Int'l, LLC*, the plaintiff alleged that the burger patties were inflated in advertisements by approximately 15%-20%, which was at the lower end of the scale of materiality. *See* https://www.businessinsider.com/mcdonalds-wendys-burgers-look-bigger-in-ads-lawsuit-dismissed-judge-2023-10. Here, plaintiffs plausibly alleged that the advertisements inflated the meat and/or filling by, at a minimum, double the amount, that is 100%. (ECF No. 7, ¶¶ 8, 21, 24, 26, 31, 64, 76.)

Taco Bell Corp. also argues that it discloses on its website that "variation [of portion] can be expected due to seasonal influences, minor differences in product assembly per restaurant and other factors." Consumers cannot be expected to search a company's website to try to determine that prominent and explicit photographic representations of a company's menu items may be materially misstated. *Cf. Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (holding that "[w]e conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."). Further, there is no evidence to suggest that seasonal influences caused Taco Bell Corp. to materially reduce the amount of meat and/or filling in the Products or that there were minor differences due to product assembly per restaurant or other factors.

Citing *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014), Taco Bell Corp. argues that Plaintiffs lack Article III standing to assert claims as to the Grande Crunchwrap®, Vegan Crunchwrap®, or Veggie Mexican Pizza, because they did not purchase said products. *DiMuro* is distinguished from this case because the Second Circuit found that plaintiff, who purchased three out of seven cosmetic products, lacked class standing because the defendant "made different advertising claims for each product." *Id*. at 3. Moreover, since *DiMuro*, several district courts within the Second Circuit have concluded that putative class-

Hon. Diane Gujarati
October 20, 2023
Page 3

action plaintiffs have standing at the pleading stage to assert consumer-protection claims relating to products they themselves did not purchase when two conditions are met: 1) the products are substantially similar to the products that they did purchase; and 2) the alleged misrepresentation is the same. *See, e.g., de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 335 (S.D.N.Y. 2021); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F.Supp.3d 261, 277 (E.D.N.Y. 2021); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 544 (E.D.N.Y. 2017); *Buonasera v. Honest Co., Inc.*, 208 F.Supp.3d 555, 563 (S.D.N.Y. 2016). Here, the Grande Crunchwrap®, Vegan Crunchwrap®, and Veggie Mexican Pizza, are substantially similar to the Crunchwrap® and the Mexican Pizza and the alleged misrepresentation, that Taco Bell's advertises said menu items as containing, at a minimum, double the beef and/or ingredients contained therein, are the same.

Taco Bell's argument that plaintiffs Bhatt and Anthony Dudick fail to allege that they ever saw the advertisements before making their purchases is inaccurate. The First Amended Complaint states that "Plaintiff Bhatt expected the amount of meat contained in said Crunchwrap Supreme® and Mexican Pizza to be similar to the photographs of the Crunchwrap Supreme® and Mexican Pizza on Tacobell.com and the store menu ordering board" and that "Plaintiffs Lenore Dudick and Anthony Dudick expected the amount of beef contained in said Crunchwrap Supremes® to be similar to the photographs of the Crunchwrap Supreme® on the store menu ordering board and in advertisements online." (ECF No. 7, ¶¶ 24, 30.) Plaintiffs also allege that "Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class Members to purchase and/or pay a premium for Defendant's Overstated Menu items when they otherwise would not have" and that "Defendant's advertising induced Plaintiffs and the members of the Class to buy Defendant's menu items." (ECF No. 7, ¶¶ 63, 72.) Plaintiffs Bhatt and Anthony Dudick could not have made said allegations without viewing said advertisements prior to purchasing.

Finally, Taco Bell Corp.'s argument that the Dudicks' claims are deficient because they received a full refund for the purchase price of the Crunchwrap Supreme® products is also inaccurate. Plaintiff Lenore and Anthony Dudick have alleged that the advertisements for the Crunchwrap Supreme® caused them to drive to and from Taco Bell and caused Lenore Dudick to again drive to and from Taco Bell and spend a lot of time in an attempt to obtain a refund. (ECF No. 7, ¶ 36.) These are measurable and actual damages, even if nominal, for which they have not been reimbursed and, as a result, they are entitled to statutory damages of $50 and $500 each for violations of New York General Business Law Sections 349 and 350, respectively. In addition, Plaintiff Lenore Dudick did not obtain a refund for her Mexican Pizza purchase. (ECF No. 7, ¶ 28.)

To the extent the Court is inclined to dismiss any of plaintiffs' claims, plaintiffs respectfully request that the Court do so without prejudice and permit plaintiffs leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure.

Respectfully Submitted,

*James Kelly*
James C. Kelly

cc: all counsel of record